**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ELMER UNDERWOOD,
Petitioner,

v.

ELKAY MINING, INCORPORATED;
HOBET MINING COMPANY; WEST
VIRGINIA C.W.P. FUND; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION

No. 95-2717

PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents,

and

W & G CONSTRUCTION COMPANY;
WHITESVILLE A & S COAL COMPANY,
Parties in Interest - Employers.

On Petition for Review of an Order
of the Benefits Review Board.
(95-0414-BLA)

Argued: October 28, 1996

Decided: February 4, 1997

Before NIEMEYER and MOTZ, Circuit Judges, and
DOUMAR, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Motz and Senior Judge Doumar joined.

_____

**COUNSEL**

**ARGUED:** Roger Daniel Forman, FORMAN & CRANE, L.C., Charleston, West Virginia, for Petitioner. Konstantine Keian Weld, Assistant Attorney General, Charleston, West Virginia; Douglas A. Smoot, JACKSON & KELLY, Charleston, West Virginia, for Respondents. **ON BRIEF:** Darrell V. McGraw, Jr., Attorney General, Charleston, West Virginia, for Respondent Fund.

_____

**OPINION**

NIEMEYER, Circuit Judge:

This case presents the question of whether an administrative law judge ("ALJ"), conducting a hearing on a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-45, committed reversible error by admitting cumulative evidence offered by the coal mine operator. Because we conclude that the ALJ's decision to allow the operator's evidence did not contravene standards established by the Administrative Procedure Act, 5 U.S.C. § 556(d), for the admission of evidence and did not constitute an abuse of discretion, we affirm.

I

Elmer Underwood labored as a coal miner for 40 years and retired from Elkay Mining, Incorporated, as a supervisor of 38 men. On his claim for black lung benefits Underwood established clearly that he suffers from a pulmonary problem, but doctors presented differing opinions as to whether it was pneumoconiosis, whether it originated from Underwood's 25-year pack-a-day smoking habit or from coal mining, and the extent of his disability. In support of his claim, Underwood submitted evidence from the West Virginia Occupational Pneumoconiosis Board (which had awarded him partial disability), a report with various tests from one doctor and nine x-ray readings by three different doctors. The respondents, in contrast, submitted a radiologist's deposition, reports with various tests from five other doctors, and multiple x-ray readings by several different doctors. Although some of the x-rays examined showed disease, the vast majority of the

2

x-rays, most of which the coal mine operator had introduced, were negative. Some of the pulmonary function studies had qualifying values, but all of the arterial blood gas studies failed to satisfy the regulatory minimum standards for disability.

In his opinion denying benefits, the ALJ summarized each of the medical opinions and evaluated each based not only on its contribution to the quantity of the evidence presented, but primarily on the opinion's quality. The ALJ found various problems with the opinions of Underwood's doctor and credited the doctors whose opinions were "more consistent with the overwhelmingly negative x-ray evidence, the reversible nature of at least some of the pulmonary function studies, and the nonqualifying arterial blood gas study results." The ALJ concluded that the reports of Underwood's doctors are "outweighed in probative effect" by the opinions of Elkay Mining's doctors.

The Benefits Review Board affirmed the ALJ's denial of benefits, and this appeal followed.

II

Underwood's principal argument on appeal is that the ALJ violated the Administrative Procedure Act, 5 U.S.C. § 556(d), by admitting cumulative or repetitive evidence submitted by Elkay Mining. Underwood asserts that Elkay Mining's submission of 18 additional evidentiary items relating to various medical issues after the 89th exhibit on its side constituted an "obscene overdevelopment" of the case. Because of his limited financial resources, Underwood maintains that the failure to exclude such evidence "allows the employer to buy more evidence and win." He contends that with the admission of this cumulative evidence, the ALJ simply "counted heads" in violation of Adkins v. Director, OWCP, 958 F.2d 49, 52 (4th Cir. 1992) (noting that merely "counting heads" is a "hollow" process). He concludes that if the ALJ had properly applied the Administrative Procedure Act's prohibition against unduly repetitious evidence, he would have succeeded in demonstrating entitlement to benefits.

The issue raised presents a legal question about the proper standard for the admission of evidence in hearings before the ALJ under the

3

Black Lung Benefits Act, which we review de novo , see Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1193 (4th Cir. 1995); Walker v. Director, OWCP, 927 F.2d 181, 183 (4th Cir. 1991), and a question about the proper application of that standard in allowing allegedly cumulative evidence into the record, which we review for abuse of discretion, see Hinkle v. City of Clarksburg, 81 F.3d 416, 424 (4th Cir. 1996); Hottle v. Beech Aircraft Corp., 47 F.3d 106, 111 (4th Cir. 1995).

In the larger context, we review the decisions of the Benefits Review Board for errors of law and to assure that the Board adhered to its statutory authority in reviewing the ALJ's factual determinations. 33 U.S.C. § 921(c); see also Dehue Coal Co., 65 F.3d at 1193. The Board must affirm the ALJ's decision if it is"supported by substantial evidence on the record considered as a whole." Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 467 (1968); 33 U.S.C. § 921(b)(3). An ALJ hearing a claim under the Black Lung Benefits Act is empowered to make credibility determinations and to weigh the evidence presented. See Zbosnik v. Badger Coal Co., 759 F.2d 1187, 1190 (4th Cir. 1985); Peabody Coal Co. v. Benefits Review Board, 560 F.2d 797, 802 (7th Cir. 1977). Moreover, as trier of fact, the ALJ is not bound to accept the opinion or theory of any medical expert. See White v. Newport News Shipbuilding & Dry Dock Co., 633 F.2d 1070, 1075 (4th Cir. 1980). He must evaluate the evidence, weigh it, and draw his own conclusions.

Hearings conducted under the Black Lung Benefits Act are governed by the Administrative Procedure Act. See  30 U.S.C. § 932(a) (incorporating 33 U.S.C. § 919(d), in turn incorporating 5 U.S.C. § 554 (the Administrative Procedure Act)); see also 20 C.F.R. § 725.452(a); Bethlehem Mines Corp. v. Henderson, 939 F.2d 143, 148 (4th Cir. 1991). And the applicable provision of the Administrative Procedure Act governing the admission of evidence provides:

> Any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitive evidence.

5 U.S.C. § 556(d).

4

Elkay Mining contends that ALJ's are required to admit all evidence, subject to objection, giving it weight where appropriate. Elkay Mining relies on the Benefits Review Board's statement holding that "the administrative law judge is required, subject to the objection by any party, to admit into the record all evidence that has been timely developed and exchanged in accordance with 20 C.F.R.§ 725.456." Cochran v. Consolidation Coal Co., 12 BLR 1-136, 1-138 (Ben. Rev. Bd. 1989). Elkay Mining also points to the language of the Black Lung Benefits Act which provides that "[i]n determining the validity of claims under this part, all relevant evidence shall be considered . . . ." 30 U.S.C. § 923(b) (emphasis added). Underwood, on the other hand, argues that the Administrative Procedure Act nevertheless requires the exclusion of "irrelevant, immaterial, or unduly repetitious" evidence. 5 U.S.C. § 556(d). While these contentions of the parties appear, at first blush, to be in conflict, a closer look demonstrates that they are not entirely inconsistent.

We begin with the statutory command that the validity of claims for black lung benefits shall be based on consideration of "all relevant evidence," 30 U.S.C. § 923(b), and with the recognition that black lung benefits proceedings are nonjury trials conducted before ALJ's who are charged with both conducting the hearing and making findings of fact. In ruling on evidence, an ALJ sees both excludable and nonexcludable evidence, but in making a decision, he considers only admitted evidence. Because the ALJ is presumably competent to disregard that evidence which should be excluded or to discount that evidence which has lesser probative value, it makes little sense, as a practical matter, for a judge in that position to apply strict exclusionary evidentiary rules. As we noted in Multi-Medical Convalescent & Nursing Center of Towson v. NLRB, 550 F.2d 974, 977 (4th Cir. 1977) (footnote omitted):

> It has long been settled that an appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made.

5

Applying that same rule to administrative agencies, we concluded bluntly, "Thus, we strongly advise administrative law judges: if in doubt, let it in." Id. at 978.

The Benefits Review Board has applied our decision in Multi-Media and reached what might appear to be an almost absolute rule that the ALJ is required to admit all evidence that is timely developed and exchanged. See Cochran, 12 BLR at 1-138. But the Board in Cochran recognized the statutory limitations of relevancy, instructing at most that where relevance is "questionable," the trier of fact would be better advised to admit the evidence. See id.

We believe that the Administrative Procedure Act's command that ALJ's should exclude "irrelevant, immaterial, or unduly repetitious evidence," 5 U.S.C. § 556(d), need not conflict with the Black Lung Benefits Act and Cochran. The exclusion of "irrelevant" or "immaterial" evidence is not here challenged and is clearly consistent with the broad statutory mandate of 30 U.S.C. § 923(b). We conclude similarly that "unduly repetitious evidence" need not be received by an ALJ hearing cases under the Black Lung Benefits Act. Evidence that is "unduly repetitious" has little or no probative value and does not fall within the statutory mandate to consider all "relevant" evidence. "While the parties certainly have the right to present evidence to defend or support their respective claims, the ALJ must be vested with the discretion to limit the impact of voluminous, duplicative evidence." Woodward v. Director, OWCP, 991 F.2d 314, 321 (6th Cir. 1993); see also Pagel, Inc. v. SEC, 803 F.2d 942, 947 (8th Cir. 1986) (upholding an ALJ's discretion to exclude expert testimony so long as the ALJ does not act arbitrarily); Yaffe Iron & Metal Co. v. EPA, 774 F.2d 1008, 1016 (10th Cir. 1985) (recognizing an ALJ's discretion to limit evidence); Atlas Copco, Inc. v. EPA, 642 F.2d 458, 467 (D.C. Cir. 1979) ("Courts have generally recognized the discretion reposed in agencies when it comes to deciding whether to permit the introduction of particular evidence at a hearing."); Alabama Ass'n of Ins. Agents v. Board of Governors, 533 F.2d 224, 254 (5th Cir. 1976) ("So long as an administrative agency is not arbitrary, it has some discretion in determining whether to admit expert evidence"), vacated in part, 558 F.2d 729 (5th Cir. 1977). Accordingly, we recognize that the APA grants ALJ's broad discretion to exclude excessive evidence which lacks significant probative value and, by implication, to limit

6

examinations, evaluations, and consultations by experts when such events will, in the ALJ's judgment, merely give rise to evidence so unduly repetitious as to be lacking in probative value.

In recognizing that an ALJ is authorized to exclude "unduly repetitious" evidence, however, we do not mean to authorize the ALJ to exclude merely repetitious or cumulative evidence so long as such evidence retains nontrivial probative value. He must conclude that the evidence serves little useful value other than to expand the record, impose additional cost, or repeat that which is already well established in the record. Two independent and qualified expert opinions that agree on a disputed point may be substantively more probative than one. And while four similar opinions also may be more probative than two, it does not follow that four are twice as probative as two. There is a point of diminishing returns and a point at which additional evidence provides almost no value. Such determinations are matters for consideration by the ALJ based on the extent and nature of the dispute on the issue, the closeness of the question, and the nature of the opinions and qualifications of the experts giving them.

In Adkins v. Director, OWCP, 958 F.2d 49 (4th Cir. 1992), we pointed out that in considering expert opinions, merely "counting heads" with the underlying presumption that two expert opinions ipso facto are more probative than one is a hollow endeavor and contributes little when weighing evidence. Id. at 52. While we recognized that merely counting heads is not the appropriate manner for an ALJ to weigh numerous and diverse opinions, we did not suggest that two or three independent, qualified opinions were necessarily of less probative value than one. In weighing opinions, the ALJ is called upon to consider their quality. Thus, the ALJ should consider the qualifications of the experts, the opinions' reasoning, their reliance on objectively determinable symptoms and established science, their detail of analysis, and their freedom from irrelevant distractions and prejudices. In addition, the ALJ should consider whether an opinion was, to any degree, the product of bias in favor of the party retaining the expert and paying the fee. To the extent that ALJ's determine that a particular expert's opinion is not, in fact, independently based on the facts of a particular claim, but is instead influenced more by the identity of his or her employer, ALJ's have clear discretion to disregard such an expert's opinion as being of exceedingly low probative value.

7

For example, this circuit, as well as most other circuits, has already concluded that an ALJ must not rely upon the opinion of an expert who expresses an opinion based on a premise "antithetical to the Black Lung Benefits Act" because such an opinion "is not probative." Thorn v. Itmann Coal Co., 3 F.3d 713, 719 (4th Cir. 1993); see also Warth v. Southern Ohio Coal Co., 60 F.3d 173, 175 (4th Cir. 1995); Robinson v. Missouri Mining Co., 955 F.2d 1181, 1183 (8th Cir. 1992); Robbins v. Jim Walter Resources, Inc., 898 F.2d 1478, 1482 (11th Cir. 1990); Penn Allegheny Coal Co. v. Mercatell, 878 F.2d 106, 109 (3d Cir. 1989); Adams v. Peabody Coal Co., 816 F.2d 1116, 1119 (6th Cir. 1987); Wetherill v. Director, OWCP, 812 F.2d 376, 382 (7th Cir. 1987); Kaiser Steel Corp. v. Director, OWCP, 757 F.2d 1078, 1083 (10th Cir. 1985).

In short, we hold that in considering multiple opinions of medical experts in black lung benefits cases, ALJ's should recognize that they must consider all relevant evidence, erring on the side of inclusion, but that they should exclude evidence that becomes unduly repetitious in the sense that the evidence provides little or no additional probative value.

Applying that principle to this case, we cannot conclude that the ALJ applied the wrong standard or abused his discretion. The challenged evidence consisted of a group of medical opinions addressing an array of disputed issues such as whether Underwood suffered from pneumoconiosis, whether his impairment arose out of coal mine employment, whether he was totally disabled, and whether he had experienced a material change since denial of his previous claim. Those issues were multiplied by evidence of six different x-rays spanning a period of ten years and revealing five different levels of opacity perfusion. Against this grid of issues, the medical reports gave various but undoubtedly overlapping opinions. The ALJ, however, found them of assistance in his evaluation of Underwood's claim, concluding that "reports of Drs. Eakle, Walker, Shank, and Rasmussen are outweighed in probative effect by the opinions of Drs. Crisalli, Fino, Jarboe, Morgan . . . and Tuteur." (Emphasis added). The fact that the evidence was cumulative does not render it, ipso facto, "unduly repetitious" as the term is used in the Administrative Procedure Act, 5 U.S.C. § 556(d).

8

Moreover, we should not conclude that the admission of cumulative evidence, when it increases confidence in the outcome of the proceedings, constitutes prejudicial error. As the Administrative Procedure Act's legislative history notes, "[a]n administrative hearing is to be compared with an equity proceeding in the courts. The mere admission of evidence is not to be taken as prejudicial error (there being no lay jury to be protected from improper influence). . . ." S. Doc. No. 79-248, at 208 (1946).

III

Underwood also claims that the ALJ's decision is not supported by substantial evidence under the standards of Dehue Coal Co., 65 F.3d at 1193. In this case, the evidence presented was clearly substantial, and the ALJ carefully evaluated each opinion in a manner consistent with the statute, regulations, and our established standards. See, e.g., Warth, 60 F.3d at 175. Accordingly, we affirm the decision of the Benefits Review Board which in turn affirmed the ALJ's decision.

AFFIRMED