**CONSOLIDATION COAL COMPANY,**
Petitioner,

v.

**Arthur O. HELD; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 99–2507.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 28, 2002.

Decided Dec. 20, 2002.

**ARGUED:** William Steele Mattingly, Jackson & Kelly, P.L.L.C., Morgantown, West Virginia, for Petitioner.   Cheryl Catherine Cowen, Waynesburg, Pennsylvania, for Respondent Held; Helen Hart Cox, United States Department of Labor, Washington, D.C., for Respondent Director. **ON BRIEF:** Kathy L. Snyder, Jackson & Kelly, P.L.L.C., Morgantown, West Virginia, for Petitioner.   Henry L. Solano, Solicitor of Labor, Donald S. Shire, Associate Solicitor, Patricia M. Nece, for Appellate Litigation, United States Department of Labor, Washington, D.C., for Respondent Director.

Before LUTTIG, WILLIAMS and GREGORY, Circuit Judges.

Vacated and remanded by published opinion.  Judge LUTTIG wrote the majority opinion, in which Judge WILLIAMS joined.  Judge GREGORY wrote a dissenting opinion.

## OPINION

LUTTIG, Circuit Judge.

Arthur Held, a longtime coal miner and smoker, sought benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, from his former employer Consolidation Coal Company ("Consol").   An administrative law judge granted Held benefits, concluding that he had established the existence of pneumoconiosis by the weight of medical opinion evidence.   The Benefits Review Board affirmed and Consol petitioned for review.   Because the ALJ failed to weigh all the relevant evidence together, as required by our decision in *Island Creek Coal Company v. Compton*, 211 F.3d 203 (4th Cir.2000), and because the ALJ gave undue weight to the opinion of Held's treating physician, Dr. Tsai, we vacate and remand for further proceedings.

### I.

For at least 32 years, Arthur Held had occupational exposure to coal mine dust. He also has a cigarette smoking history of 1 pack per day for at least 40 years.   Held retired from coal mine employment in 1982 and filed his first application for federal black lung disability benefits.   An ALJ denied his application and he took no further action concerning the claim.

Held filed a new application for benefits on March 14, 1996.   Consol was identified as the responsible coal mine operator. The parties stipulated to a material change in condition and the ALJ conducted a hearing.

The ALJ first noted that Held could not establish pneumoconiosis under either subsection (a)(2) or (a)(3) of 20 C.F.R. § 718.202 because there was no biopsy evidence and no applicable presumptions. The ALJ then considered the x-ray evidence, which consisted of 29 chest x-rays that had been examined by numerous phy-

sicians. Only 7 of the readings, by 6 physicians, were positive for pneumoconiosis. Fifty-two readings, by multiple physicians, were negative. The ALJ concluded that the most recent x-ray evidence was in conflict and thus he could not "find [that] the miner established CWP [coal workers' pneumoconiosis] through x-ray evidence alone." J.A. 526.

The medical opinion evidence was also in conflict. Drs. Tsai, Jaworski, and Garson opined that Held had developed a totally disabling chronic obstructive pulmonary disease as a result of both his exposure to coal dust and his smoking history. Drs. Renn, Morgan, and Fino testified that Held's health problems resulted from his smoking history, and not his exposure to coal dust. The ALJ credited the opinions of Drs. Tsai, Jaworski, and Garson, discredited the opinions of Drs. Renn, Morgan, and Fino, and concluded that Held had established the existence of pneumoconiosis by the weight of medical opinion evidence. After determining that Held had satisfied the other elements necessary for a black lung claim, the ALJ awarded benefits to Held, which were to commence from the month in which Held filed his claim. Consol appealed to the Board, which affirmed. Consol now petitions for review in this court.

## II.

▮ We review the Board's order by undertaking an independent review of the record to determine whether the ALJ's findings of fact were supported by substantial evidence. *Island Creek Coal Company v. Compton*, 211 F.3d at 207. *De novo* review applies to the legal conclusions of the Board and ALJ. *Id.* at 208.

## A.

▮ Consol argues that the ALJ should have weighed all relevant evidence of pneumoconiosis together. 20 C.F.R. § 718.202(a) provides four ways in which a claimant can establish the presence of pneumoconiosis. The regulation states, in relevant part, that:

(a) A finding of the existence of pneumoconiosis may be made as follows:

(1) A chest X-ray conducted and classified in accordance with § 718.102 may form the basis for a finding of the existence of pneumoconiosis. . . .

(2) A biopsy or autopsy conducted and reported in compliance with § 718.106 may be the basis for a finding of the existence of pneumoconiosis. . . .

(3) If the presumptions described in §§ 718.304, 718.305 or § 718.306 are applicable, it shall be presumed that the miner is or was suffering from pneumoconiosis.

(4) A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. . . .

20 C.F.R. § 718.202. In *Island Creek Coal Company v. Compton*, we were presented with the issue of whether ALJs could consider evidence adduced under each of the four subsections of section 718.202(a) in the disjunctive. We rejected the Board's argument that if the evidence relevant to one subsection supported a finding of pneumoconiosis, other evidence bearing on a different subsection could be ignored. Instead, we decided that "the proper method is to weigh the different types of evidence together to determine whether a preponderance of *all* of the evidence establishes the existence of pneumoconiosis." *Compton*, 211 F.3d at 208; *see id.* (concluding that the "plain meaning" of 30 U.S.C. § 923(b) requires the weighing of

all relevant evidence together "rather than merely within discrete subsections of § 718.202(a)").

■ In its opinion in this case, the ALJ stated that the Third Circuit had held that evidence under each of the four methods of establishing the disease must be considered together. J.A. 524 (citing *Penn Allegheny Coal Co. v. Williams*, 114 F.3d 22 (3d Cir.1997)). Having outlined the proper approach, the ALJ proceeded to ignore it. At no point in its opinion did the ALJ weigh the evidence from the different subsections of section 718.202(a) against one another. And the Board, in reviewing the ALJ, only considered whether the ALJ's finding was supportable under section 718.202(a)(4).[1]

The ALJ's failure to weigh all the evidence together raises precisely the concern expressed in *Compton* that "the existence of pneumoconiosis could be found even though the evidence as a whole clearly weighed against such a finding." 211 F.3d at 209. While there was not a perfect consensus as to the x-ray evidence, the vast majority of readers over time had found the x-ray results to be negative. *See* J.A. 525 ("Fifty-two readings are negative, by multiple physicians, all of whom are B-readers, and either board-certified in radiology or internal medicine, or both . . . ."). Moreover, those physicians who gave negative readings had, as a group, far more impressive credentials than those who rendered positive readings. *See id.* (of the 6 physicians who gave a positive reading, only 2 were B-readers, 1 was an A-reader, and 3 had unknown qualifications). If the ALJ had properly balanced the x-ray evidence against the medical opinion evidence, which was itself mixed, its conclusion may well have been different.[2] Thus, as we did in *Compton*, the proper course for this court is to vacate the ALJ's decision and remand to allow the ALJ to weigh *all* of the relevant evidence together.

## B.

■ Consol also objects to the ALJ's treatment of Dr. Tsai. Specifically, Consol asserts that the ALJ erred by inflating Dr. Tsai's credentials and by giving him special deference based solely on his status as Held's treating physician. Dr. Tsai was Held's treating physician for ten years. The ALJ noted that, as a treating physician, "generally [Dr. Tsai's] opinion would ordinarily be entitled to more weight." J.A. 526. The ALJ proceeded to accord Dr. Tsai's opinion "a great deal of weight," *id.*, because he had conducted ten annual examinations of Held.

The ALJ's treatment of Dr. Tsai was inconsistent with the law. In *Grizzle v. Pickands Mather and Co.*, 994 F.2d 1093 (4th Cir.1993), we clearly stated that "[n]either this circuit nor the Benefits Review Board has ever fashioned either a requirement or a presumption that treating or examining physicians' opinions be given greater weight than opinions of oth-

---

1. The Board's opinion suggests that it thought the ALJ weighed the evidence on an *intra*subsection basis. *See* J.A. 544 ("The [ALJ] found that while the existence of pneumoconiosis was not established pursuant to 20 C.F.R. § 718.202(a)(1)-(3), it was established by the medical opinion evidence pursuant to 20 C.F.R. § 718.202(a)(4).").

2. It often appears before this court that neither the physician-witness nor the ALJ sufficiently distinguishes between medical and legal pneumoconiosis, a distinction that is imperative for proper resolution of this type of case. In this instance, it was the coal companies' expert witness, Dr. Renn, who arguably failed in making the critical distinction. On remand this distinction should be borne in mind, not simply by the ALJ, but the witnesses on both sides of the dispute.

er expert physicians." *Id.* at 1097; *see also Compton*, 211 F.3d at 212 ("An ALJ may not discredit a physician's opinion solely because the physician did not examine the claimant."). That statement is still true today. Thus, while Dr. Tsai's opinion may have been entitled to special consideration, it was not entitled to the great weight accorded it by the ALJ.

The ALJ's treatment of Dr. Tsai also deviated from the facts of this case. The ALJ listed Dr. Tsai among the physicians with the best credentials. *See* J.A. 527 ("Of the six physicians providing post 1990 reports, Drs. Tsai, Jaworski, Renn, and Fino have the best credentials, with Drs. Garson and Morgan, although having impressive credentials, falling a tier below.").[3] Drs. Jaworski, Renn, and Fino were all B-readers who had specialty training in pulmonary medicine. While Dr. Tsai is board certified in internal medicine, he has no specialty training in pulmonary medicine and has no special radiological training reading x-rays. J.A. 514. His credentials do not compare to the other top physicians, and the ALJ should not have listed him among them as having comparable credentials. Even were it permissible to accord a physician's opinion greater weight simply due to his treating status, which it is not, treating status would still be irrelevant when considering the relative credentials of the various physicians.[4]

## CONCLUSION

For the forgoing reasons, we vacate the order of the Board and remand with in-

structions for the Board to remand the action to an ALJ for further proceedings.

## VACATED AND REMANDED.

GREGORY, Circuit Judge, dissenting:

Consol disputes the ALJ's determination that Arthur O. Held, a coal miner for nearly forty years, is entitled to benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.* There is no doubt that Held suffers from severe, pulmonary-related illnesses. Medical experts disagree, however, on the cause of his condition. Some doctors believe that Held's disability is due solely to his forty-year history as a pack-a-day smoker. Others conclude that both his smoking and his decades of work in the coal mines are responsible.

In a thirty-seven page opinion, the ALJ considered all of the conflicting evidence, and found that Held suffered from pneumoconiosis arising at least partly from his coal-mine employment. The U.S. Department of Labor's Benefits Review Board ("Board") affirmed these findings as supported by substantial evidence in the record. Like the Board, we review the ALJ's findings of fact under the substantial evidence standard. Because I believe that the majority misapplies this standard, I respectfully dissent.

### I.

While we review the Board's and the ALJ's conclusions of law *de novo*, we review the ALJ's factual findings under the more deferential substantial evidence stan-

---

3. Consol also argues that the ALJ erred by failing to properly evaluate Dr. Morgan's credentials. On remand, the ALJ should consider Dr. Morgan's extensive credentials, included in the record as Employer's Exhibit 12.

4. In its brief, Consol also argued that 20 C.F.R. § 725.503(b) violates section 7(c) of the Administrative Procedure Act because it allows the claimant to recover benefits for a period of time for which no evidence of entitlement exists. At oral argument, however, counsel for Consol explicitly withdrew this challenge, and we therefore do not consider it.

dard. *Ante,* at 186. The substantial evidence standard is far more deferential than *de novo;* "it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir.2001)(quoting *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966)). *See also Piney Mountain Coal Co. v. Mays,* 176 F.3d 753, 756 (4th Cir.1999); *Staten v. Califano,* 598 F.2d 328, 331 (4th Cir.1979) ("Our scope of review is confined to determining whether the Secretary's decision was supported by substantial evidence. We are not to try the case *de novo.*") (internal citations omitted).

In agency cases, the reviewing court should not substitute its judgment for that of the ALJ. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence."). Specifically, in black lung cases, the ALJ as trier of fact "is not bound to accept the opinion or theory of any medical expert." *Underwood v. Elkay Mining, Inc.,* 105 F.3d 946, 949 (4th Cir.1997). Rather, his role is to "evaluate the evidence, weigh it, and draw his own conclusions." *Id.* In reviewing these conclusions, "We must sustain the ALJ's decision, even if we disagree with it, provided the determination is supported by substantial evidence and thus, would be enough to justify a refusal to direct a verdict in a jury trial." *Smith v. Chater,* 99 F.3d 635, 637–38 (4th Cir. 1996).

## II.

I agree with the majority that the ALJ misapplied Fourth Circuit law on two points. First, the ALJ incorrectly considered the x-ray evidence and the physicians' opinions separately, instead of weighing these two types of evidence together. Second, the ALJ erred in concluding that "generally" the opinion of a treating physician "would *ordinarily* be entitled to more weight" than the opinions of other doctors. J.A. at 526 (emphasis added).

Of course, not every error committed by an ALJ is reversible error. *Jericol Mining, Inc. v. Napier,* 301 F.3d 703 (6th Cir.2002); *Underwood,* 105 F.3d at 949–50. In *Jericol Mining,* the ALJ inappropriately gave "additional weight" to a coal miner's primary treating physician. 301 F.3d at 710. Additionally, the ALJ "erred in attributing greater weight to the opinion of [a second treating physician] simply because he saw [the miner] more frequently than the other examining physicians." *Id.* at 711. Having found these two errors of law, the Sixth Circuit nevertheless affirmed the ALJ's ruling. The court explained:

> [The coal company's] central argument, when stripped to its essentials, appears to be a quarrel with the ALJ's credibility determinations. But this court is required to defer to the ALJ's assessment of the physicians' credibility. In light of the entire record, we conclude that the ALJ's findings were based upon substantial evidence and therefore should be affirmed.

*Id.* at 713–14 (internal citations omitted).

The analytical approach of the *Jericol Mining* court applies equally well to the present case. Thus, before determining whether the ALJ's legal errors require reversal, we must review his findings of fact in light of the entire record. If substantial evidence supports the ALJ's decision to rely on Dr. Tsai's opinion and place less emphasis on the x-ray evidence, then the ALJ's and the Board's decisions should be affirmed. *Id.* at 711.

## III.

### A.

The majority initially finds fault with the ALJ's conclusion that the x-ray evidence was inconclusive, neither supporting nor defeating the miner's claim of CWP. The majority then suggests that the x-ray evidence weighs heavily against a finding of coal worker's pneumoconiosis. *See ante,* at 187. In so doing, the Court effectively embarks on a *de novo* review of the ALJ's findings of fact.

The ALJ observed that, from 1976 to 1997, sixty-nine x-ray readings were completed. J.A. at 525. While most of these readings were negative, the ALJ found that the most important readings were the two most recent, both of which were done in 1997. He noted, "Dr. Fino's 9/4/97 reading ... was negative for CWP," while Dr. Garson read the 1/22/97 x-ray as "positive for simple CWP." J.A. at 525–26. The ALJ, therefore, concluded that "the two most important x-rays, in 1997, appear contradictory. Thus, I cannot find the miner established CWP through x-ray evidence alone." J.A. at 526.

Considering this evidence anew, I might find, as the majority implies, that the x-rays weigh against a finding of CWP. After all, only seven of the sixty-nine x-ray readings were positive for CWP. *See* J.A. at 525. However, "We must sustain the ALJ's decision, even if we disagree with it, provided the determination is supported

by substantial evidence...." *Smith v. Chater,* 99 F.3d at 637–38. In this case, "more than a mere scintilla of evidence" supports the ALJ's conclusion that the x-ray evidence is inconclusive. *See Mastro,* 270 F.3d at 176. The fact that the two most recent x-rays are in conflict is sufficient to support the ALJ's conclusion. This factual determination, therefore, should be upheld.

### B.

Unable to resolve the case on the x-ray evidence alone, the ALJ turned to the testimony of the various physicians who considered the miner's condition.[1] In reviewing this medical evidence, the ALJ found that the opinions of three doctors—Drs. Tsai, Jaworski, and Garson—supported a finding of CWP. In contrast, Drs. Fino, Renn, and Morgan all advised against such a finding. As mentioned above, the ALJ erred in stating that Dr. Tsai's opinion would generally be entitled to greater weight. In *Milburn Colliery Co. v. Hicks,* this Court stated, "[A]n ALJ should not 'mechanistically credit[ ], to the exclusion of all other testimony,' the testimony of an examining or treating physician solely because the doctor personally examined the claimant." 138 F.3d 524, 533 (4th Cir.1998). However, a treating physician's opinion is entitled to "special consideration." *Grizzle v. Pickands Mather & Co.,* 994 F.2d 1093, 1097 (4th Cir.1993) (*abrogated on other grounds, Hicks,* 138 F.3d at 530).[2] In this case, after evaluat-

---

1. As stated above, the ALJ erred in considering the physicians' opinions separately from the x-ray evidence. *See Island Creek Coal Co. v. Compton,* 211 F.3d 203, 208 (4th Cir.2000).

2. The *Grizzle* court explained the distinction between "greater weight" and "special consideration" as follows:

   We have often stated that as a general matter the opinions of treating and examining physicians deserve special consider-

ation.... [We have never held, however,] that the opinions of treating or examining physicians must be accorded greater weight than opinions of other physicians. It is, of course, one thing to say that we give great weight to the treating or examining physician's opinion; it is quite another to say that as a matter of law we give greater weight to such an opinion than to opinions by other physicians.

ing the conflicting medical evidence, the ALJ reasonably concluded that Dr. Tsai's opinion was reliable, trustworthy, and therefore entitled to "a great deal of weight." J.A. at 526.

The majority, however, states that "[t]he ALJ's treatment of Dr. Tsai also deviated from the facts of this case.... While Dr. Tsai is board certified in internal medicine, he has no specialty training in pulmonary medicine and has no special radiological training reading x-rays." *Ante*, at 188. Thus, the majority finds that Dr. Tsai's opinion is less persuasive than the testimony of Drs. Jaworski, Renn, and Fino. In reaching this conclusion, the majority again misapplies the "substantial evidence" standard of review. The additional training that Drs. Renn, Jaworski, and Fino received is relevant, but it is not dispositive. While the ALJ inappropriately concluded that Dr. Tsai's reports would *generally* be entitled to more weight, this does not mean that a treating physician's opinion can *never* be entitled to more weight. When there is a conflict among the medical evidence, the ALJ is encouraged to consider the specific facts of the case and decide which physician's opinion is entitled to the greatest weight. *Underwood*, 105 F.3d at 949.

Dr. Tsai has been Held's regular treating physician since 1976. As the ALJ noted, Dr. Tsai "conducted at least ten annual full pulmonary evaluations and his opinion carries a great deal of weight." J.A. 526. Like Drs. Renn and Fino, Dr. Tsai did his residency in internal medicine. While Dr. Tsai did not do a post-residency fellowship in pulmonary diseases, he does have considerable practical experience with CWP. He has practiced as a general internist since 1975, with coal miners making up twenty to forty percent of his patient population. Much of his practice focuses on cardio-pulmonary problems. J.A. 196. In short, he has considerable experience in diagnosing and treating CWP.

In addition, Dr. Tsai's opinion is buttressed by the conclusions of Drs. Jaworski and Garson. Dr. Jaworski is board certified in internal medicine, with subspecialties in pulmonary diseases and critical care. J.A. at 279. He is a "B" reader for chest x-rays. He examined Held on May 16, 1996, and concluded that Held had a "multifactorial etiology," with both cigarettes and coal dust playing a role in his illness. J.A. at 299. Dr. Jaworski based his finding on "the presence of the air-way obstruction and a significant history of exposure to coal dust." J.A. at 301. He explained, "There's no specific test that diagnoses this. We're basically relying on history, physical exam, and pulmonary function testing." J.A. at 302.

Dr. Garson has sub-specialities in preventive medicine, public health, and occupational medicine. He arguably has the most significant experience in the field of pulmonary diseases of any of the physicians offering opinions in this case.[3] Dr. Garson examined Held in 1997, and concluded that Held suffered from severe chronic obstructive pulmonary disease, emphysema, and coal workers' pneumoconiosis. He explained, "[T]he portion of his coal workers' pneumoconiosis ... caused

994 F.2d at 1097–98 (internal citations omitted).

3. Dr. Garson explained, "I was sent by the United States Public Health Services to the coal producing nations ... to review the prevention of coal workers' pneumoconiosis underground in coal mining. I brought back that information which was presented to Congress and was included in the 1969 Act ... involving protection of coal mine workers in this country." J.A. at 329. In addition, Dr. Garson worked as the Medical Director for the petitioner, Consol, for several years. J.A. at 328.

by his underground coal mine employment [is supported by] his pulmonary function and breathing tests that exceed the levels necessary for disability and compensation." J.A. at 341–42. Like Dr. Jaworski, Dr. Garson emphasized "that part of [Held's] problem is due to his coal workers' pneumoconiosis, part is due to his emphysema [from smoking], and it is not possible—we have no testing mechanism to evaluate exactly how much. But clearly both are at work. . . ."

In contrast to these conclusions, Drs. Fino, Renn, and Morgan found there to be no evidence of CWP. The ALJ, however, reasoned that the testimony of these doctors was "disingenuous." J.A. at 527. For example, despite seeing thousands of patients over twenty-five years, Dr. Renn has never diagnosed a patient with CWP absent a positive x-ray, biopsy, or autopsy. The Department of Labor's regulations, however, state that "[a] determination of the existence of pneumoconiosis may also be made . . . notwithstanding a negative x-ray . . . ." 20 C.F.R. § 718.202(a)(4).[4] The regulations further explain, "No claim for benefits shall be denied solely on the basis of a negative chest x-ray." § 718.202(b). Therefore, the ALJ properly viewed Dr. Renn's analysis with suspicion.

Similarly, the ALJ discounted Dr. Morgan's opinion because of a perceived bias that was evident in Dr. Morgan's written report. In that report, Dr. Morgan dismissed, without explanation, evidence supporting a finding of CWP. For example, Dr. Morgan opines that Dr. Jaworski's analysis (finding CWP) was "based on tenuous evidence," but he does not explain why he reaches this conclusion. Instead, he offers the conclusory explanation, "I do not find his argument compelling." J.A. at 240. He then considers Dr. Renn's finding that cigarette smoke is solely responsible for Held's problems, and notes without elaboration, "I have a great regard for Dr. Renn." J.A. at 241. When another physician, Dr. Fisher, interprets a chest x-ray to contain some evidence of pneumoconiosis, Dr. Morgan outright dismisses these findings: "I place little reliance on Dr. Fisher's opinion." J.A. at 243. After offering a blanket dismissal of any evidence that would support a finding of CWP, Dr. Morgan summarily concludes that there is "nothing to suggest" that Held's illnesses are at least partially attributable to coal mine dust. *See* J.A. at 238–48.

Dr. Fino testified in person before the ALJ, giving the ALJ a unique opportunity to assess Dr. Fino's credibility. The ALJ noted that Dr. Fino receives ninety percent of his referrals from coal-industry employers. J.A. at 520. He further questioned Dr. Fino's testimony that he finds CWP in only fifteen percent of the patients he sees, and of that small percentage, only one fourth are diagnosed as being "disabled" because of CWP. *Id.* The ALJ was particularly troubled by these statistics because Dr. Fino did not find CWP in Held's case despite the fact that he "admitted that some of Mr. Held's test results approach consistency with CWP." J.A. at 527.

In the end, the ALJ's factual findings, based on the evidence in the record, should be upheld. Specifically, substantial evidence supports the ALJ's decision to give greater weight to the testimony of Dr. Tsai. Similarly, the ALJ's finding that the

---

4. The majority observes that it is unclear from the record whether Dr. Renn was referring to medical CWP or the broader category of legal CWP. *Ante*, at 187 n. 2. Thus, it is difficult to discern whether Dr. Renn's comments are hostile to the Act. The ALJ, however, is permitted to draw reasonable inferences from Dr. Renn's deposition. As the trier of fact, his interpretation of Dr. Renn's comments is entitled to some deference.

opinions of Drs. Fino, Morgan and Renn were disingenuous is supported by substantial evidence. Therefore, while this Court might reach a different conclusion if it were reviewing the evidence *de novo*, we should not disturb these factual findings under the substantial evidence standard.

## IV.

In summary, there is far more than a mere scintilla of evidence supporting the ALJ's findings of fact. Thus, the ALJ was justified in relying on Dr. Tsai's opinion and in dismissing the opinions of Drs. Renn, Fino, and Morgan, which were based almost exclusively on the inconclusive x-ray evidence. For these reasons, I dissent.

