**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 06-1435**

---

ISLAND CREEK COAL COMPANY,

Petitioner,

versus

WILLIAM L. GROVES; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,

Respondents.

---

On Petition for Review of an Order of the Benefits Review Board.
(05-0559-BLA)

---

Submitted: July 18, 2007          Decided: August 17, 2007

---

Before NIEMEYER, TRAXLER, and DUNCAN, Circuit Judges.

---

Vacated and remanded by unpublished per curiam opinion.

---

Ashley M. Harman, William S. Mattingly, JACKSON KELLY PLLC,
Morgantown, West Virginia, for Petitioner. John Cline, Piney View,
West Virginia, for Respondent William L. Groves.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Island Creek Coal Company (employer) seeks review of the Benefits Review Board's (BRB) decision and order affirming the administrative law judge's (ALJ) award of black lung benefits on a claim filed by William Lawrence Groves pursuant to 30 U.S.C. §§ 901-945 (2000). Because we conclude that the ALJ erred in her evaluation of the evidence, we vacate the award of benefits and remand for reconsideration.

We review decisions of the BRB to determine whether the BRB properly found that the ALJ's decision was supported by substantial evidence and was in accordance with law. Consolidation Coal Co. v. Held, 314 F.3d 184, 186 (4th Cir. 2002). In making this determination, we undertake an independent review of the record to decide whether the ALJ's findings are supported by substantial evidence. Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1193 (4th Cir. 1995). Substantial evidence is more than a scintilla, but only such evidence that a reasonable mind could accept as adequate to support a conclusion. Lane v. Union Carbide Corp., 105 F.3d 166, 170 (4th Cir. 1997). In conducting such review, however, the court confines itself to the grounds upon which the BRB based its decision. Grigg v. Dir., Office of Workers' Comp. Programs, 28 F.3d 416, 418 (4th Cir. 1994).

Subject to the substantial evidence requirement, the ALJ has the sole authority to make credibility determinations and

resolve inconsistencies or conflicts in the evidence.  Grizzle v. Pickands Mather & Co., 994 F.2d 1093, 1096 (4th Cir. 1993).  An ALJ, however, may rely only on a medical opinion that constitutes a reasoned medical judgment.  Freeman United Coal Mining Co. v. Cooper, 965 F.2d 443, 448 (7th Cir. 1992).  An ALJ must evaluate the quality of medical opinions by considering "the qualifications of the experts, the opinions' reasoning, their reliance on objectively determinable symptoms and established science, their detail of analysis, and their freedom from irrelevant distractions and prejudices."  Underwood v. Elkay Mining, Inc., 105 F.3d 946, 951 (4th Cir. 1997).

To establish that he is entitled to black lung benefits in a case under Part 718, a miner must prove:  "(1) he has pneumoconiosis; (2) the pneumoconiosis arose out of coal mine employment; (3) he has a totally disabling respiratory or pulmonary condition; and (4) pneumoconiosis is a contributing cause to his total respiratory disability."  Milburn Colliery Co. v. Hicks, 138 F.3d 524, 529 (4th Cir. 1998).  A claimant may establish the existence of pneumoconiosis by means of (1) chest x-rays; (2) biopsy or autopsy evidence; (3) invocation of the presumptions at 20 C.F.R. §§ 718.304 - .306 (2006); or (4) medical opinion evidence.  See 20 C.F.R. § 718.202(a) (2006).  In this case, there is no autopsy or biopsy evidence, and the presumptions of §§ 718.304 - .306 do not apply because there is no evidence that

- 3 -

Groves suffered from complicated pneumoconiosis, the claim in question was filed after January 1, 1982, and this is a living miner claim.

Employer first argues that the ALJ erred in determining that Groves suffered from pneumoconiosis. Specifically, employer asserts that the ALJ erred by applying a "later is better evidence" rule and vestiges of the true doubt rule to conclude that the x-ray evidence established the existence of pneumoconiosis. Employer also argues that the ALJ failed to properly consider CT scan evidence, and erred in her consideration of the physicians' opinions. The ALJ considered ten readings of three different x-rays. She found that the earliest x-ray, taken on May 16, 1995, was negative, that the readings of the December 19, 2002, x-ray were in equipoise, but that the positive readings of the May 28, 2003, x-ray slightly outweighed the negative readings of that x-ray. The ALJ concluded that, because the most recent x-ray was positive and the next most recent was in equipoise, the preponderance of the x-ray evidence established the existence of the disease.

Our review convinces us that the ALJ's conclusion is supported by substantial evidence. Contrary to employer's arguments, the ALJ did not misapply the "later is better" evidence rule criticized by this court in <u>Adkins v. Dir., Office of Workers' Comp. Programs</u>, 958 F.2d 49 (4th Cir. 1992). Rather, her analysis

is consistent with the progressive nature of the disease. E. Assoc. Coal Corp. v. Dir. Office of Workers' Comp. Programs, 220 F.3d 250, 258-59 (4th Cir. 2000). Although the two most recent x-rays are separated by only six months, the ALJ correctly noted that the positive readings by dually-qualified readers slightly outnumbered the negative readings by dually-qualified readers. Contrary to employer's argument, all B readers are not considered equal, as readings by those B readers who are also board-certified radiologists are entitled to greater weight. 20 C.F.R. § 718.202(a)(1) (2007). Employer's argument amounts to a request that this court reweigh the x-ray evidence, and is without merit

Employer also asserts that the ALJ erred in failing to weigh all relevant evidence, as required by this court's decision in Island Creek Coal Co. v. Compton, 211 F.3d 203 (4th Cir. 2000). Employer contends the ALJ failed to adequately consider the negative readings of two CT scans. We agree. The ALJ gave reduced weight to the CT scans because the record did not document how those negative readings compared with the positive x-ray interpretations. This analysis is not supported by substantial evidence. The record includes, in addition to the interpretations of the CT scans, comments by Doctors Wiot and Zaldivar regarding the value of CT scans in diagnosing pneumoconiosis. In his deposition, Dr. Crisalli disputed Dr. Rasmussen's characterization of the x-ray evidence as mixed based on the negative CT scans,

which offset the positive x-ray readings. Contrary to the ALJ's statement, the comments of Doctors Wiot, Zaldivar, and Crisalli demonstrate that the CT scans are at least equivalent to a chest x-ray as a diagnostic tool, and logically lead to the conclusion that the negative CT scans directly contradict the positive x-ray readings. Because the ALJ erred in her analysis of the CT scans, we conclude that her conclusion that Groves suffered from pneumoconiosis is not supported by substantial evidence.

The ALJ also based her weighing and crediting of the various physicians' opinions on whether they agreed or disagreed with her conclusion that the x-ray evidence was sufficient to establish the existence of pneumoconiosis. The ALJ's error in evaluating the CT scan evidence undermines her evaluation of the physicians' opinions, particularly those of Doctors Zaldivar and Crisalli. The ALJ also found Dr. Rasmussen's opinion worthy of greatest weight, but did not explain why she credited his opinion over the opinions of Doctors Zaldivar and Crisalli who possess greater medical qualifications in the area of pulmonary disease. Moreover, Dr. Rasmussen relied heavily on the positive x-ray readings, which the other doctors characterized as questionable in light of the CT scan readings.

The ALJ discredited Dr. Zaldivar's opinion because he opined that the negative chest x-rays indicate that Groves had inhaled an insufficient amount of coal dust to have caused any

- 6 -

damage. The ALJ concluded that this statement was inconsistent with the regulatory provision that a claim shall not be denied based solely on a negative x-ray. See 20 C.F.R. § 718.202(b) (2006). We conclude that this analysis is not supported by substantial evidence, but amounts to the ALJ substituting her opinion for that of a medical expert. Dr. Zaldivar did not opine that pneumoconiosis can never be diagnosed without a positive x-ray reading, but stated that in this case Groves's x-ray did not exhibit any signs that he had inhaled sufficient dust to cause any damage to his lungs to explain the pulmonary symptoms he exhibited.

The ALJ also discredited Dr. Zaldivar's opinion because he "testified that he is of the opinion that chronic obstructive pulmonary disease is not caused by coal mine dust exposure." This finding is also not supported by substantial evidence, but results from a selective reading of Dr. Zaldivar's deposition. The portion of Dr. Zaldivar's deposition testimony cited by the ALJ occurred during cross-examination by Groves's counsel concerning Dr. Zaldivar's comments regarding various medical studies, including studies that he authored. Dr. Zaldivar's comments were expressed in the context of a discussion of the results of medical studies he either reviewed or personally conducted. Moreover, Dr. Zaldivar did not opine that coal mine dust exposure cannot cause an obstructive impairment; rather, the results of his study indicated that such an impairment in coal miners occurred when the miners

were cigarette smokers. These statements are not a valid basis for discrediting Dr. Zaldivar's opinion.

The ALJ also discredited the opinion of Dr. Crisalli because he failed to explain why he eliminated coal mine dust exposure as a cause of Groves's respiratory impairment. Dr. Crisalli attributed Groves's impairment to bullous emphysema caused by his lengthy smoking history, and concluded that "[i]n this particular case with this extent of bullous emphysema and all that air trapping, that would further support that tobacco smoke is, not only a major component, it is the only component." Our review of Dr. Crisalli's written report and deposition testimony lead us to conclude that he ruled out coal dust exposure as the cause for Groves's respiratory impairment because the objective evidence overwhelmingly supported a diagnosis of bullous emphysema, which he testified he had never seen in miners who had not smoked. The ALJ erred in discrediting Dr. Crisalli's opinion.

Employer also argues that the ALJ erred in her evaluation of the medical opinion of Dr. Jarvis, Groves's treating physician. The BRB agreed with this argument, but held that the ALJ's error was harmless because the ALJ relied on the opinion of Dr. Rasmussen to conclude that Groves suffered from legal pneumoconiosis. In light of the ALJ's error in evaluating the CT scans and medical opinions, we conclude that the error in weighing Dr. Jarvis's opinion is not harmless. Because the errors of the ALJ in

- 8 -

evaluating the evidence regarding the existence of pneumoconiosis require a remand for reconsideration, we do not address employer's assertions of error in the ALJ's conclusions regarding the cause of Groves's respiratory disability.

Employer's final argument is that the ALJ erred in excluding several proffered exhibits because they exceeded the limitations at 20 C.F.R. § 725.414(a). Employer does not assert that the ALJ erroneously interpreted the limitations in the regulation, but argues the regulation is inconsistent with the Black Lung Benefits Act, the Administrative Procedure Act, and this court's precedent. This argument is foreclosed by this court's decision in <u>Elm Grove Coal Co. v. Dir., Office of Workers' Comp. Programs</u>, 480 F.3d 278 (4th Cir. 2007).

Accordingly, we vacate the award of benefits and remand for reconsideration. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>VACATED AND REMANDED</u>