**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 06-1662**

_____

UNITED STATES STEEL MINING COMPANY, LLC,

Petitioner,

versus

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS; MARVELLA K. COOPER, widow of Forest
P. Cooper,

Respondents.

_____

On Petition for Review of an Order of the Benefits Review Board.
(05-0825-BLA)

_____

Argued: September 27, 2007           Decided: November 2, 2007

_____

Before SHEDD, Circuit Judge, HAMILTON, Senior Circuit Judge, and
Samuel G. WILSON, United States District Judge for the Western
District of Virginia, sitting by designation.

_____

Petition for review granted; order vacated by unpublished per
curiam opinion.

_____

Howard Gerald Salisbury, Jr., KAY, CASTO & CHANEY, P.L.L.C.,
Charleston, West Virginia, for Petitioner.   James Morrison
Haviland, PYLES, HAVILAND, TURNER & SMITH, L.L.P., Charleston, West
Virginia, for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

United States Steel Mining Co. ("U.S. Steel") petitions for review of the Benefits Review Board's ("BRB") order affirming the administrative law judge's ("ALJ") award of survivor's black lung benefits to Marvella K. Cooper, widow of Forest P. Cooper. Because we conclude that the ALJ's decision is not supported by substantial evidence, we grant the petition and vacate the award of benefits.

I

Forest P. Cooper worked for U.S. Steel as a coal miner for approximately 25 years. Following his coal mine employment, Mr. Cooper suffered from simple coal workers' pneumoconiosis. Mr. Cooper also smoked between one-half and one pack of cigarettes per day from 1982 until his death. During the last year of his life, he was diagnosed with metastatic renal cell carcinoma, which spread into his lungs and resulted in his death in 2002.

Following Mr. Cooper's death, Mrs. Cooper filed an application for survivor's black lung benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. In order to obtain survivor's benefits, Mrs. Cooper was required to prove that (1) Mr. Cooper had pneumoconiosis; (2) the pneumoconiosis arose out of coal mine employment; and (3) Mr. Cooper's death was due to pneumoconiosis. 20 C.F.R. § 718.205. An individual's death is "due to" pneumoconiosis if the pneumoconiosis substantially

2

contributed to and/or hastened his death. See 20 C.F.R. § 205(c)(2), (4), (5).

The ALJ concluded that Mrs. Cooper had satisfied her burden of proof on the existence of pneumoconiosis and that Mr. Cooper's pneumoconiosis arose out of his coal mine employment. U.S. Steel does not challenge these findings on appeal. However, U.S. Steel does challenge the ALJ's conclusion that pneumoconiosis substantially contributed to or hastened Mr. Cooper's death.

II

We review decisions of the BRB to determine whether the BRB properly found that the ALJ's decision is supported by substantial evidence and is in accordance with law. Consolidation Coal Co. v. Held, 314 F.3d 184, 186 (4th Cir. 2002). In making this determination, we undertake an independent review of the record to decide whether the ALJ's findings are supported by substantial evidence. Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1193 (4th Cir. 1995). Substantial evidence is more than a scintilla, but only such evidence that a reasonable mind could accept as adequate to support a conclusion. Lane v. Union Carbide Corp., 105 F.3d 166, 170 (4th Cir. 1997) (internal quotation and citation omitted).

Subject to the substantial evidence requirement, an ALJ has the sole authority to make credibility determinations and resolve inconsistencies or conflicts in the evidence. Grizzle v. Pickands

Mather & Co., 994 F.2d 1093, 1096 (4th Cir. 1993) (internal quotation and citation omitted). However, an ALJ must perform the gate-keeping function of qualifying evidence as "reliable, probative, and substantial" before relying upon it to grant or deny a claim. United States Steel Mining Co. v. Dir., Office of Workers' Comp. Programs, 187 F.3d 384, 389 (4th Cir. 1999). An ALJ must evaluate the quality of medical opinions by considering "the qualifications of the experts, the opinions' reasoning, their reliance on objectively determinable symptoms and established science, their detail of analysis, and their freedom from irrelevant distractions and prejudices." Underwood v. Elkay Mining, Inc., 105 F.3d 946, 951 (4th Cir. 1997).

III

U.S. Steel argues that the ALJ's conclusion that Mr. Cooper's death was due to pneumoconiosis is not supported by substantial evidence. In reaching his conclusion, the ALJ relied on the "Reasoned Medical Opinion" of Dr. Ward, who is a Doctor of Osteopathy and Family Practitioner, and who was Mr. Cooper's primary treating physician from 1993 until his death. In his opinion, Dr. Ward stated:

> I had listed the cause of death [on Mr. Cooper's death certificate] as metastatic renal cell carcinoma. I had also listed coal worker's pneumoconiosis as a contributing cause to his death. I based that on the clinical course of his illness after his tumor was diagnosed in March of 2002. Following the diagnosis of

4

the tumor, the patient experienced a rapid downhill course. During his last days, Mr. Cooper suffered from severe respiratory symptoms including severe dyspnea and respiratory distress in May of 2002. He was hospitalized for these symptoms. At that time, he was started on continuous oxygen therapy. During the last few days of his life, Mr. Cooper was treated by me in a Hospice setting. Throughout his last days, he suffered from severe respiratory distress and severe dyspnea. It is my opinion that the terminal event in his illness was respiratory failure secondary to severe lung disease. This lung disease at his death was largely due to tumors replacing his lung, but I feel that his chronic long-standing lung disease caused by coal worker's pneumoconiosis was a contributing factor to his death. In conclusion, I feel that it is entirely reasonable to state that Mr. Cooper's coal worker's pneumoconiosis contributed materially to his death, shortened his life, and hastened the process of his demise.

J.A. 261.

The ALJ considered and rejected the contrary report of Dr. Bush, a board-certified pathologist. After examining Mr. Cooper's autopsy report and other medical records, Dr. Bush opined:

[Mr. Cooper's death] resulted from renal cell carcinoma widely spread by direct extension into the liver and surrounding renal tissues, lymphatic invasion of lymph nodes and hematogenous spread to lungs and possibly other organs. This extent of malignant disease would have ended in death at the same time and in the same manner if the lungs were totally free of coal mine dust and were perfectly normal. I disagree with the opinion of Dr. Ward who treated Mr. Cooper in the last decade of life. Mr. Cooper reportedly had chronic lung disease but this was attributable to a significant cigarette smoking history, under-reported as one-half pack per day by Dr. Ward. Other records show one pack per day. The fact that smoking continued even when death was imminent suggests a serious smoking habit resulting in emphysema observed at autopsy and responsible for symptoms prior to metastatic carcinoma. The abnormal chest x-rays attributed to coal mine dust exposure early in the medical history are proven not significant at autopsy. Mr. Cooper had severe pulmonary symptoms in the weeks and

5

months prior to death as a result of the massive invasion of the lungs by carcinoma producing hemoptysis, abnormal chest x-rays, and respiratory insufficiency. The limited extent of the coal mine dust disease at autopsy cannot be considered causally related to death with any degree of reasonable medical certainty.

Id. at 262.

The ALJ also considered the testimony of Dr. Walker, chairman of the West Virginia Occupational Pneumoconiosis Board. Dr. Walker testified that Mr. Cooper's pneumoconiosis did not contribute to his death in any way:

I think [Dr. Ward is] not making a reasonable evaluation of the medical evidence. . . . when an individual has a carcinoma that originated in another part of the body with multiple metastatic lesions with the chest, even to the heart and to the chest wall, that patient is dying of cancer of the primary tumor, which was a carcinoma of the kidney. To carry Dr. Ward's opinion, any individual having any diagnosis of occupational pneumoconiosis and he died of any other cause, it would be a material contributing factor. Dr. Ward's opinion in this particular case is not consistent with the medical facts, and I don't think it's consistent with the practice of the medical community today. I don't think you can really find anyone who is doing this type of work that would accept Dr. Ward's opinion. I think he's just totally, totally wrong.

Id. at 263.

Although he acknowledged that Drs. Bush and Walker had superior qualifications, the ALJ nonetheless credited the opinion of Dr. Ward. The ALJ emphasized that Dr. Ward was Mr. Cooper's treating physician and that Mr. Cooper had experienced respiratory problems during life, concluding that Dr. Ward's opinion was "most consistent with Mr. Cooper's history and the medical data in

6

evidence." Id. at 265. We disagree with the ALJ's conclusion. The fact that Mr. Cooper worked in coal mines and suffered from respiratory problems during life does not support the conclusion that pneumoconiosis contributed to his death.

The only evidence in the record linking Mr. Cooper's pneumoconiosis to his death is the written opinion of Dr. Ward. We conclude that this opinion is not substantial evidence on which the ALJ was permitted to rely. Dr. Ward's opinion is not a reasoned medical judgment, but consists only of conclusory statements with no explanation of the reasoning that led to the conclusion. Indeed, the only support offered for Dr. Ward's conclusion is his statement that Mr. Cooper suffered respiratory problems in the days leading to his death. However, there is no dispute that Mr. Cooper suffered from renal cancer that spread aggressively into his lungs at the end of his life. Dr. Ward offers no explanation as to why he concluded that pneumoconiosis, rather than the cancer which was overtaking Mr. Cooper's lungs, was the cause of these breathing difficulties.

In the absence of any explanation for Dr. Ward's belief that pneumoconiosis, rather than cancer, was responsible for Mr. Cooper's end-of-life respiratory problems, Dr. Ward's opinion does nothing more than state a conclusion. Accordingly, the ALJ improperly relied on Dr. Ward's opinion in awarding benefits. Because the ALJ's decision is not supported by substantial

7

evidence, we grant the petition for review and vacate the award of benefits.

PETITION FOR REVIEW GRANTED;
ORDER VACATED
