UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

CONSOLIDATION COAL COMPANY,
                                    *Petitioner,*

                    v.

THEODORE M. LATUSEK, JR.;                         No. 03-1112
DIRECTOR OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,
                                    *Respondents.*

On Petition for Review of an Order of the
Benefits Review Board.
(02-279-BLA)

Argued: October 28, 2003

Decided: January 23, 2004

Before LUTTIG, WILLIAMS, and GREGORY, Circuit Judges.

Reversed by unpublished per curiam opinion. Judge Gregory wrote a
dissenting opinion.

## COUNSEL

**ARGUED:** William Steele Mattingly, JACKSON KELLY, P.L.L.C.,
Morgantown, West Virginia, for Petitioner. Sue Anne Howard,
HOWARD LAW OFFICE, Wheeling, West Virginia, for Respon-
dents.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Consolidation Coal Company seeks review of the decision and order of the Benefits Review Board affirming the administrative law judge's award of black lung benefits pursuant to 30 U.S.C.A. §§ 901-945 (West 1986 & Supp. 2003). Because our review of the record discloses that the ALJ's decision is not supported by substantial evidence, we reverse the award of benefits.

### I.

Theodore Latusek, Jr., worked in the coal mines of West Virginia for approximately twenty-four years, all of them with Consolidation Coal. During his tenure, Latusek worked as a general laborer, shuttle car operator, loading machine operator, miner operator, mechanic, section boss, and long wall operations coordinator. He was exposed to dust throughout his career, particularly while he served as a long wall operations coordinator.

The history of Latusek's diagnosis and treatment is summarized in our earlier opinion in this case. *See Consolidation Coal Co. v. Latusek*, 187 F.3d 628, 1999 WL 592051 (4th Cir. 1999) (unpublished) (*Latusek I*). Latusek has at least a mild case of coal workers' pneumoconiosis and interstitial pulmonary fibrosis (IPF).[1] The parties agree that Latusek has a totally disabling pulmonary condition. As the ALJ found, "[a]ll of the experts agree that claimant's total disability is due to IPF; however, the experts provide conflicting testimony as to the cause of the disability. Drs. Jennings and Rose concluded that IPF is related to exposure to coal mine dust, while Drs. Kleinerman,

---

[1]Interstitial pulmonary fibrosis (IPF) is also known as usual interstitial fibrosis (UIP). For ease of reference, we will refer to the condition as IPF.

Renn, Morgan, and Fino concluded that IPF is not related to coal dust exposure." (J.A. at 540.)

In his first decision, the ALJ concluded that "claimant's IPF arose out of his coal mine employment and . . . he is totally disabled due to pneumoconiosis." (J.A. at 507.) The BRB affirmed the ALJ's decision. On Consolidation Coal's petition for review, we vacated the award of benefits and remanded for further consideration because "the ALJ did not fulfill his duty to fully consider the entire record and provide adequate reasons for discounting significant expert medical testimony." *Latusek I*, 1999 WL 592051 at **5. We were particularly concerned with the ALJ's crediting of the testimony of Drs. Jennings and Rose based primarily on three medical articles discussing IPF, which offered "[a]t best . . . tepid support" for their conclusion. *Id.* at **4. Moreover, we found it "most troubling" that the ALJ's "sole reason . . . for discrediting the opinions of Drs. Kleinerman, Renn, Morgan, and Fino was that 'they were unable to cite any medical articles finding that there was no causal connection between IPF and coal dust exposure.'" *Id.* (citation and footnote omitted).

In his second decision, the ALJ again awarded benefits. The ALJ found that the opinions of Drs. Fino, Morgan, Kleinerman, and Renn were irrational because they "agree that they do not know the etiology of claimant's IPF, although they all opine it cannot be coal dust exposure." (J.A. at 531.) The ALJ also found that Drs. Rose and Jennings had "more expertise in regard to IPF," and that their opinions were well-reasoned. (J.A. at 531.) Accordingly, he gave their opinions "the most weight." (J.A. at 531.)

The BRB concluded that "[t]he administrative law judge's weighing of the . . . medical opinions of record . . . cannot be affirmed." (J.A. at 536.) Among other flaws, the BRB concluded that the ALJ did not address Consolidation Coal's argument that the opinions of Drs. Jennings and Rose were not reliable because they were based on flawed epidemiological studies contained in the three medical articles. (J.A. at 537.) Accordingly, the BRB vacated the ALJ's findings and remanded for further proceedings.

In his third decision, the ALJ once again awarded benefits. With regard to the credentials of the doctors, the ALJ found:

> While the credentials of Dr. Kleinerman, an expert on the
> pathology of occupational lung diseases, and Drs. Renn,
> Morgan, and Fino, pulmonary specialists with expertise on
> occupational lung diseases, are undoubtly [sic] impressive,
> Drs. Jennings and Rose's credentials are superior to these
> physicians in the area of interstitial lung disease. . . . There-
> fore, I find Dr. Jennings and Rose['s] credentials regarding
> IPF superior to the credentials of Drs. Kleinerman, Renn,
> Morgan, and Fino, and accord their opinion great weight.

(J.A. at 540-41.) The ALJ again found the opinions of Drs. Kleiner-
man, Fino, Renn, and Morgan to be "irrational" because "these physi-
cians are able to draw a conclusion as to what is not the cause of
claimant's IPF when they cannot even give an opinion as to the cause
of this disease." (J.A. at 541.) Therefore, the ALJ accorded these
opinions "little weight." (J.A. at 541.)

   The ALJ also found that "the opinions of Drs. Jennings and Rose
[were] well documented and better supported by the underlying data
of record and therefore accord[ed] these opinions great weight." (J.A.
at 541.) With regard to the allegedly flawed epidemiological studies
underlying the three medical articles that Drs. Jennings and Rose
relied on, the ALJ found that "[e]ven if these studies are flawed, I find
the opinions of Drs. Jennings and Rose to be reliable. I credit their
opinions without regard to these articles because the physicians did
not rely on these articles in their opinion that claimant's IPF is related
to his coal mine employment, but merely used them as support for
their opinion." (J.A. at 542.) Over a strong dissent, the BRB affirmed
the ALJ's award of benefits. Consolidation Coal petitions for review
of the BRB's order.

## II.

   We review decisions of the BRB to determine whether the BRB
properly found that the ALJ's decision was supported by substantial
evidence and was in accordance with law. *See Doss v. Director,
Office of Workers' Compensation Programs*, 53 F.3d 654, 658-59
(4th Cir. 1995). In making this determination, we conduct an indepen-
dent review of the record in deciding whether the ALJ's findings are
supported by substantial evidence. *See Dehue Coal Co. v. Ballard*, 65

F.3d 1189, 1193 (4th Cir. 1995). Substantial evidence is more than a scintilla, but only such evidence that a reasonable mind could accept as adequate to support a conclusion. *See Lane v. Union Carbide Corp.*, 105 F.3d 166, 170 (4th Cir. 1997).

In order to establish a right to benefits under the Black Lung Benefits Act, 30 U.S.C.A. §§ 901-945, "a *claimant must prove* that (1) he has pneumoconiosis; (2) the pneumoconiosis arose out of his coal mine employment; (3) he has a totally disabling respiratory or pulmonary condition; and (4) pneumoconiosis is a contributing cause to his total respiratory disability." *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 529 (4th Cir. 1998) (emphasis added) (citing, *inter alia*, 20 C.F.R. §§ 718.201-.204 (1997)).[2] Because the ALJ found, "[a]ll of the experts agree that the claimant's total disability is due to IPF," (J.A. at 540), the only remaining question is whether Latusek's IPF meets the definition of legal pneumoconiosis, which is "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201 (2003). If it does, then pneumoconiosis is a contributing cause to his total respiratory disability.

Drs. Jennings and Rose concluded that Latusek's IPF is related to exposure to coal mine dust, while Drs. Kleinerman, Renn, Morgan, and Fino concluded that Latusek's IPF is not related to coal dust exposure. The ALJ credited the opinions of Drs. Jennings and Rose over the opinions of Drs. Kleinerman, Renn, Morgan, and Fino. Our review of the record convinces us that the ALJ erred in his evaluation of the medical opinion evidence. First, it was error to discredit the opinions of Drs. Fino, Renn, Morgan, and Kleinerman as irrational solely because they were "able to draw a conclusion as to what is not the cause of claimant's IPF when they cannot even give an opinion as to the cause of this disease." (J.A. at 541.) It is clearly not irrational for a physician to eliminate certain causes while not being able to ascertain the definitive cause.

---

[2] We note that 20 C.F.R. § 718 (1998) applies to all claims filed after April 1, 1980, and thus applies to this case. *See Lane v. Union Carbide Corp.*, 105 F.3d 166, 170 (4th Cir. 1997).

Second, we have previously held in this case that Dr. Jennings's credentials, and by analogy Dr. Rose's, are "not indisputably superior to those of the other physicians of record." *Latusek I*, 1999 WL 592051 at \*\*4 n.4. Drs. Jennings and Rose have experience with IPF, but the relevant question here is whether Latusek's IPF is a "chronic dust disease of the lung . . . arising out of coal mine employment," 20 C.F.R. § 718.201. Thus, the extensive experience of Drs. Renn, Fino, Morgan, and Kleinerman with patients having coal mine experience and coal dust exposure must be factored in along with their experience with IPF.[3] Our dissenting colleague notes that Drs. Jennings and Rose have some experience with patients having coal dust exposure. *Post*, at 9-10. The ALJ, however, credited Drs. Jennings and Rose's opinions because he found their "*credentials regarding IPF* superior to the credentials of Drs. Kleinerman, Renn, Morgan, and Fino." (J.A. at 540-41.) We must review the findings that the ALJ actually made. It was error to discredit the opinions of Drs. Kleinerman, Renn, Morgan, and Fino as having inferior credentials in the area of IPF without considering the vast experience that these doctors have researching, diagnosing and treating diseases that meet the relevant regulatory standard, that is "chronic dust disease[s] of the lung . . . arising out of coal mine employment," 20 C.F.R. § 718.201.

Third, the ALJ's finding that Drs. Jennings and Rose did not rely on the flawed articles in coming to their conclusions is not supported by substantial evidence. Although the doctors noted a few factors that made Latusek's IPF atypical, the deposition testimony of both doctors shows that they relied on the epidemiological research in the three

---

[3]For example, as we noted in *Latusek I*, "Dr. Jerome Kleinerman has served as the Director of the Department of Pathology at the Metro Campus of Case Western Reserve University, has chaired the National Institute of Occupational Safety and Health committee responsible for developing the guidelines for diagnosing coal workers' pneumoconiosis, and has authored over 160 articles appearing in peer review journals, the vast majority of which dealt with lung disease, pneumoconiosis, or emphysema. Dr. Kleinerman is board certified in clinical pathology and pathologic anatomy. In addition, Dr. Kleinerman undertook graduate studies in human pulmonary function at the University of Pennsylvania Graduate School of Medicine following his graduation from medical school." *Consolidation Coal Co. v. Latusek*, 187 F.3d 628, 1999 WL 592051 (4th Cir. 1999) (unpublished).

medical articles in coming to their conclusions that there was a relationship between Latusek's coal dust exposure and his IPF. (*See* J.A. at 303-08 (deposition of Dr. Jennings) ("There is epidemiologic research, which suggests that individuals with exposure to silicates and other dusts have a much higher frequency of developing interstitial pulmonary fibrosis . . . ."); J.A. at 244-45 (deposition of Dr. Rose) ("[T]here is data emerging to suggest that there may be a relationship between exposure to occupational dust with the subsequent development of pneumoconiosis, and with histologic findings of diffuse interstitial fibrosis.").)

The "substantial evidence" standard is tolerant of a wide range of findings on a given record, but the ALJ's decision here exceeds the limits of that tolerance. We find that "no 'reasonable mind' could have interpreted and credited the [medical opinions] as the ALJ did." *See Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 764 (4th Cir. 1999). Because there remains no evidence upon which to base a finding of entitlement to benefits, Latusek has not carried his burden to prove that his total disability is due to pneumoconios. Accordingly, we reverse the award of benefits.

*REVERSED*

GREGORY, Circuit Judge, dissenting:

Consolidation Coal Company ("Consol") disputes the Administrative Law Judge's ("ALJ") conclusion that Theodore Latusek is entitled to benefits under Title VI of the Federal Coal Mine Health and Safety Act of 1969 ("Black Lung Benefits Act" or "BLBA"); 30 U.S.C. §§ 901-45 (West 1986 & Supp. 2003). On July 5, 1994, Latusek, who had never been a smoker, filed a disability claim, after retiring from twenty-four years of coal mine employment. The parties do not dispute that Latusek suffers from a totally disabling pulmonary condition; however, Consol's experts claim that the etiology of Latusek's impairment is unknown, while Latusek's physicians maintain that his condition was caused by occupational coal dust exposure.

In three separate opinions, the ALJ has consistently concluded that Latusek demonstrated that he was entitled to black lung benefits. The ALJ's conclusion was affirmed on two separate occasions by the Ben-

efits Review Board ("BRB").[1] Consol, Latusek's former employer, appeals the BRB's most recent order affirming the ALJ's decision to award black lung benefits. After reviewing the entire record, I find there is substantial evidence to support the ALJ's decision. Accordingly, for the reasons that follow, I respectfully dissent.

I.

The majority asserts that it reviewed the ALJ's order under the "substantial evidence" standard, which is far more deferential than de novo review. Under the substantial evidence standard, reviewing courts are prohibited from substituting their judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the court, to make findings of fact and to resolve conflicts in evidence."). The majority ignores this well established principle of appellate review by concluding that it was irrational for the ALJ to rely on the opinions of Drs. Jennings and Rose more than those of Drs. Renn, Morgan, Fino, and Kleinerman. Because the ALJ is in a better position to make credibility determinations, I cannot agree with the majority's decision to substitute its judgment for that of the ALJ. If substantial evidence supports the ALJ's credibility decisions, which I submit it does, then the ALJ's decision must be affirmed.

II.

The majority asserts that it was error for the ALJ to discredit the expert opinions of Drs. Renn, Morgan, Fino, and Kleinerman "solely because they were 'able to draw a conclusion as to what is not the cause of claimant's IPF when they cannot even give an opinion as to the cause of this disease.'" *Ante*, at *5. This assertion is not entirely accurate. A review of the record reveals that the ALJ did not discredit the opinions of Drs. Renn, Morgan, Fino, and Kleinerman *solely*

---

[1]In the BRB's second opinion, it affirmed in part the ALJ's discrediting of Drs. Naeye and Spagnolo, but vacated the weight accorded by the ALJ to the opinions of Drs. Renn, Fino, and Morgan. Consequently, the BRB vacated the ALJ's order and remanded for further proceedings. (J.A. 536, 538.)

because they could not determine the etiology of Latusek's disability, even though they were certain it was not attributable to coal dust exposure. Rather, in the ALJ's third decision and order, he finds "Dr. Jennings [sic] and Roses's credentials regarding IPF [to be] superior to the credentials of Drs. Kleinerman, Renn, Morgan, and Fino, and accord their opinion great weight."[2] (J.A. 541.)

The law instructs that, particularly in black lung cases, the ALJ "is not bound to accept the opinion or theory of any medical expert." *Underwood v. Elkay Mining, Inc.*, 105 F.3d 946, 949 (4th Cir. 1997). Rather, it is the ALJ's responsibility to "evaluate the evidence, weigh it, and draw his own conclusion." *Id.* The ALJ reviewed and weighed the evidence in this case not once, but three times, and on each occasion, the ALJ concluded that Latusek was entitled to black lung benefits. In reviewing the ALJ's conclusions, "[w]e must sustain the ALJ's decision, even if we disagree with it, provided the determination is supported by substantial evidence. . . ." *Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996). A review of the physicians' respective qualifications reveals that the ALJ's decision to accord greater weight to the opinions of Drs. Jennings and Rose was supported by substantial evidence.

Dr. Cecil Rose, one of Latusek's treating physicians, is "board certified in internal medicine, pulmonary diseases, and occupational medicine." (J.A. 527.) Moreover, she is employed at the National Jewish Center ("NJC"), which is a premier institution treating interstitial pulmonary fibrosis. Additionally, Dr. Rose is a member of the Committee on Pneumoconiosis for the American College of Radiology and the Chair of the Committee for the Association of Occupational and Environmental Clinics. (J.A. 233.) She was also a certified "B" reader for chest x-rays.[3] During her deposition, Dr. Rose estimated that throughout her career she has evaluated approximately

---

[2]In its final opinion, the BRB specifically affirmed the ALJ's decision to accord more weight to Drs. Jennings and Rose. In particular, the BRB held that, "[b]ecause the administrative law judge acted within his discretion in finding the opinions of Drs. Jennings and Rose to be credible, we reject employer's allegation of error." (J.A. 547.)

[3]Dr. Rose subsequently decided not to seek recertification, because she "didn't want to keep reading the films." (J.A. 234.)

more than one hundred patients for coal worker's pneumoconiosis ("CWP") and other coal mine dust-related diseases. (J.A. 234-235.) She also evaluated Latusek on several occasions, beginning in 1993, when she documented his occupational history. Undoubtedly, Dr. Rose has considerable experience in diagnosing and treating CWP. Given Dr. Rose's credentials and experience, there was substantial evidence in the record to support the ALJ's decision to rely upon her diagnosis of CWP and her conclusion that Latusek's condition was caused by his occupational exposure.

Likewise, substantial evidence supports the ALJ's determination that the opinion of Dr. Constance Jennings was credible. Dr. Jennings is also a staff member of the NJC, and she is board certified in internal medicine, pulmonary diseases, and critical care medicine. Additionally, Dr. Jennings is the Clinical Director of the Interstitial Lung Disease Laboratory at the NJC, (J.A. 528), and an assistant professor with the University of Colorado Medical School, where her primary teaching responsibility is in the area of interstitial lung diseases. (J.A. 285-86.) Before joining the NJC, Dr. Jennings was a staff member at the National Institute of Health ("NIH") for two years, where she worked exclusively in the area of interstitial lung diseases. (J.A. 286.) Since joining the NJC, her primary focus has been on interstitial lung diseases. *Id.* During her deposition, Dr. Jennings testified that she has evaluated and/or treated approximately 50 to 100 patients at the NJC "who have worked in and about coal mines who have an interstitial-type lung disease." (J.A. 289.) Further adding to Dr. Jennings's credentials is the fact that she has published several articles on IPF.

On the other hand, the following doctors each testified that the etiology of Latusek's disability was unknown, despite having positively concluded that it was not related to coal dust exposure. Dr. Kleinerman, the former Director of the Department of Pathology at the Metro Health Campus of Case Western Reserve University, (J.A. 339), never examined Latusek, but he reviewed his medical records and biopsy slides and concluded "with reasonable medical certainty" that Latusek's lung disease "can not be attributed to coaldust [sic] exposure or simple coalworkers [sic] pneumoconiosis." (J.A. 57.) Additionally, Dr. Kleinerman is not board certified in internal medicine or pulmonary diseases, and he is not a certified "B" reader because he has never taken the necessary examination. (J.A. 344.)

Dr. W.K.C. Morgan is also not board certified in pulmonary diseases or internal medicine. (J.A. 530). He is a fellow of the Royal College of Physicians of Edinburgh, "which he testified is somewhat equivalent to U.S. board certification, although he was *not* required to take any medical boards." *Id.* (emphasis added.) Dr. Morgan reviewed Latusek's medical records and submitted a report, wherein he stated that Latusek had "minimal evidence of coal workers' pneumoconiosis" and that he did "not believe that the interstitial fibrosis present in Mr. Latusek is a result of coal worker's pneumoconiosis. . . ." (J.A. 175.)

Dr. Fino is board certified in pulmonary diseases and internal medicine, and he is also a certified "B" reader. (J.A. 402.) However, unlike Dr. Jennings, he has not published any articles relating to coal workers' pneumoconiosis. *Id.* Dr. Fino examined Latusek on August 24, 1995, and later diagnosed him with "simple coal workers' pneumoconiosis" and "an idiopathic interstitial pulmonary fibrosis." (J.A. 184.) Dr. Fino concluded that Latusek has a "significant pulmonary impairment characterized by progressive restrictive lung disease which has worsened significantly since 1990." *Id.* Despite this conclusion, Dr. Fino ultimately opined that Latusek's "impairment and disability would be present had he never stepped foot in the coal mines." (J.A. 186.)

Dr. Renn is board certified in internal medicine and the subspecialty of pulmonary diseases. He is also a certified "B" reader of x-rays. He treated Latusek over the course of three years, from April 14, 1992 through April 25, 1995. (J.A. 501.) Dr. Renn ordered Latusek's first lung biopsy, which was performed in June 1992. (J.A. 499.) Dr. Renn diagnosed interstitial pulmonary fibrosis ("IPF"). (J.A. 501.) Dr. Renn regularly sees and treats patients with CWP, which is why Latusek was referred to him. However, the ALJ noted that Dr. Renn "explicitly stated in his deposition that he referred claimant to the National Jewish Center because his treatment plan was not working and *because of the Center's expertise in treating patients with IPF*." (J.A. 541) (emphasis added.)

Drs. Rose and Jennings relied on the following clinical findings to reach their conclusions that Latusek's condition was related to coal dust exposure: (1) the unusually early onset of the disease in Latusek,

who was only 39 years old, (2) his heavy exposure to silicates or coal mine dust, (3) a finding of pneumoconiosis combined with his exposure, (4) the presence of emphysema in a non-smoker, (5) the unusual nature of Latusek's IPF lesion, and (6) the abnormally elevated cell count in his lungs, which indicated the presence of an irritant in the lung. Clearly, there was more than a mere scintilla of evidence supporting Drs. Rose's and Jennings's conclusion that Latusek's IPF was caused by his coal dust exposure. Accordingly, the ALJ's decision to give greater credence to the opinions of Drs. Jennings and Rose was appropriate.

## III.

Next, the majority holds that there was substantial evidence to conclude that Drs. Jennings and Rose relied upon on the "flawed" articles in determining that Latusek's disability was related to coal dust exposure. *Ante*, at *6. I respectfully disagree. Dr. Rose testified in her deposition that "[t]here's enormous uncertainty about th[e] relationship [between CWP and IPF], but there is data emerging to suggest that there may be a relationship between exposure to occupational dust with the subsequent development of pneumoconiosis. . . ." (J.A. 244.) Although acknowledging the research, Dr. Rose stated that she did not "wish to ignore the uncertainty associated with [her] opinion," (J.A. 245), but she ultimately concluded as follows:

> it is my opinion, to a reasonable probability, that in Mr. Latusek's case, given the atypical nature and presentation of his lesion and given his history of coal mine dust exposure and the associated finding of simple coal worker's pneumoconiosis with emphysema, that the two [Latusek's work exposure and his condition] are related, and that his occupational exposure to coal mine dust probably did have an association with his subsequent development of his IPF-type condition.

(J.A. 246).

Likewise, Dr. Jennings also testified in her deposition about the increasing amount of research being done regarding the connection between exposure to silicates and IPF. (J.A. 303-308.) However,

when asked how she was able to link Latusek's disease to his coal mine employment, Dr. Jennings replied:

> there's probably a number of pieces of evidence that could be used to support the contention that his disease is due to the silicates. First we have discussed, one, his age; secondly, would be his heavy exposure, which just based on history of quite an extensive exposure involving a lot of drilling and long wall exposure. Thirdly, would be the histologic evidence . . . [which] demonstrates silicates exposure with findings compatible with simple coal worker's pneumoconiosis and silicate deposition. There is evidence of injury to the small airways. There's evidence of emphysema in a non-smoker. . . . And finally, in the areas of peripheral fibrosis, even in the areas of honeycomb, silicate deposits are seen within the areas of honeycomb, strongly indicating silicates in the pathogenesis of the fibrotic process.

(J.A. 309-310.) Based upon Drs. Jennings's and Rose's deposition testimony, it is clear that they did not rely solely on the three related articles to determine that Latusek's condition was caused by his coal dust exposure. The majority incorrectly determines that substantial evidence supports a conclusion that Latusek's physicians relied upon the "flawed" articles. In fact, a review of the record reveals the opposite conclusion; the physicians merely acknowledged the research being done to support a connection between IPF and CWP. Despite acknowledging this growing area of research, their conclusions were based primarily upon Latusek's medical, histologic, and employment background, rather than on the articles. Accordingly, I disagree with the majority's conclusion on this issue.

IV.

In sum, I believe there was substantial evidence in the record to support the ALJ's factual findings that Drs. Jennings's and Rose's opinions were entitled to more weight than the opinions of Drs. Renn, Morgan, Fino, and Kleinerman. Likewise, the ALJ's factual finding that Consol's experts were less experienced in IPF is supported by substantial evidence. Therefore, while the majority may have reached a different conclusion after reviewing the record de novo, we should

not disturb the ALJ's factual findings under the substantial evidence standard. Accordingly, I maintain that the ALJ's decision should be upheld.